UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**GRAND ISLE SHIPYARDS, INC.**          **CIVIL ACTION**

**VERSUS**                              **CASE NO. 15-129**

**BLACK ELK ENERGY OFFSHORE**           **SECTION: "G" (5)**
**OPERATIONS, LLC**

## ORDER AND REASONS

Before the Court is Plaintiff Grand Isle Shipyard, Inc.'s ("GIS") "Motion for Partial Summary Judgment."[1] In this litigation, GIS claims that Defendant Black Elk Energy Offshore Operations, LLC ("BEEOO") failed to pay GIS for goods and services connected to BEEOO's oil operations.[2] BEEOO filed a counterclaim, alleging that GIS engaged in fraud, breach of contract, breach of warranty and negligence when GIS performed work on BEEOO's platform.[3] GIS filed the instant motion for partial summary judgment, urging the Court to rule as a matter of law that BEEOO breached the parties' contract.[4] In opposition, BEEOO argues that issues of fact remain on what contract GIS alleges was breached, whether GIS itself breached the contract, and whether the proper amount of damages is before the Court.[5] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 125.

[2] Rec. Doc. 1-1 at 2.

[3] Rec. Doc. 4.

[4] Rec. Doc. 125-1 at 1.

[5] Rec. Doc. 105.

1

## I. Background

*A.   Factual Background*

In the second amended complaint, GIS alleges that BEEOO breached the terms of the parties' agreement by failing to pay for services rendered.[6] GIS asserts that BEEOO contracted with GIS for GIS to provide goods and services in support of BEEOO's oil operations, but GIS contends that it never received payment for the services.[7] GIS avers that BEEOO is liable for breach of contract, bad faith breach of contract, and detrimental reliance.[8] GIS also seeks relief through quantum meruit, a well lien act claim under the Louisiana Oil Well Lien Act ("LOWLA") and a request for a writ of sequestration and judgment on BEEOO's property.[9]

*B.   Procedural Background*

On December 5, 2014, GIS filed a petition against BEEOO in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.[10] GIS asserted a claim under the Oil Well Lien Act.[11] On January 21, 2015, BEEOO removed the case to this Court, asserting diversity jurisdiction.[12] On March 17, 2015, BEEOO answered the petition and asserted a counterclaim against GIS.[13] In the counterclaim, BEEOO alleged that GIS engaged in fraud, breach of contract, breach of warranty, and negligence surrounding GIS's work on BEEOO's oil platform West Delta 32 ("West Delta 32").[14] On March 23, 2015, GIS amended its complaint to add claims for breach

---

[6] Rec. Doc. 20 at 2–3.

[7] *Id.* at 3.

[8] *Id.* at 4–5.

[9] *Id.* at 3–4.

[10] Rec. Doc. 1-1.

[11] *Id.*

[12] Rec. Doc. 1.

[13] Rec. Doc. 14.

[14] *Id.*

of contract, bad faith breach of contract, detrimental reliance, and quantum meruit.[15] On June 3, 2015, GIS filed a second amended complaint, removing several of the properties for which it alleged claims.[16]

On August 11, 2015, certain creditors of BEEOO filed an involuntary petition for relief under Title 11 of the United States Code against BEEOO in the United States Bankruptcy Court for the Southern District of Texas.[17] On August 19, 2015, this Court issued an order staying and administratively closing the case pending BEEOO's bankruptcy.[18] On July 13, 2016, the bankruptcy court issued an order confirming the liquidation plan regarding BEEOO and appointing Richard Schmidt as the liquidation trustee.[19] On May 10, 2018, this Court reopened the case and substituted Richard Schmidt in the place of BEEOO.[20]

At a December 19, 2018 oral argument on GIS's motion to dismiss, BEEOO admitted that its fraud and negligence claims were prescribed under Louisiana law.[21] Accordingly, on December 26, 2018, the Court dismissed BEEOO's fraud and negligence claims.[22] On May 28, 2019, GIS filed the instant motion for partial summary judgment.[23] On June 3, 2019, BEEOO filed an opposition.[24] With leave of Court, GIS filed a reply in support of the motion on June 5, 2019.[25]

---

[15] Rec. Doc. 16.

[16] Rec. Doc. 20.

[17] *See* Rec. Doc. 29-2.

[18] Rec. Doc. 32.

[19] Rec. Doc. 34-1 at 23–24, 26–27.

[20] Rec. Doc. 42. Though Richard Schmidt is the active Defendant in the case, the Court refers to Defendant as BEEOO for continuity between the briefings.

[21] Rec. Doc. 70 at 1.

[22] *Id.* at 1–2.

[23] Rec. Doc. 125.

[24] Rec. Doc. 133.

[25] Rec. Doc. 141.

## II. Parties' Arguments

### A.  *GIS' Arguments in Support of the Motion for Partial Summary Judgment*

In the motion, GIS urges the Court to find that BEEOO breached the parties' contract for payment of services rendered.[26] GIS avers that it entered into a Business Alliance Agreement ("BAA") with BEEOO, under which GIS "provided labor, materials, supplies, machinery, fuel, goods and services in connection with and in support of BEEOO's drilling and/or production operations and/or abandonment of certain oil and gas wells."[27] GIS also alleges that it contracted with D&R, a labor staffing company, to supply workers for BEEOO's operations.[28] GIS contends that as it performed the requested work on BEEOO's platforms, BEEOO's representatives would sign the work tickets to certify the work.[29] According to GIS, after it obtained this certification, it would attach the work tickets to billing invoices, send the invoices to BEEOO, and BEEOO's construction superintendent would approve the invoices for payment.[30]

GIS avers that BEEOO followed this process during 2010 and 2011 and paid all relevant invoices during that time, but "[i]n 2012, BEEOO stopped making payments on GIS' invoices even though BEEOO continued to use GIS' equipment."[31] GIS alleges that it suffered damages as a result of BEEOO's breach of contract and failure to pay for services rendered.[32] GIS asserts that it is entitled to, at a minimum, "a payment of $3,359,309.58 for its invoices BEEOO has failed to

---

[26] Rec. Doc. 125-2 at 1.

[27] *Id.* at 2.

[28] *Id.* at 2–3.

[29] *Id.* at 3.

[30] *Id.*

[31] *Id.* at 4.

[32] *Id.*

pay, associated with GIS's work between June 2, 2012 to September 12, 2014."[33] In clarifying the damages, GIS states that its secured claim in the bankruptcy proceeding totals "$2,215,615.99, plus pre- and post- petition interest, attorneys' fees, costs and expenses."[34] GIS' also represents that it asserted "an unsecured claim in the amount of $1,143,693.59 exclusive of pre- and post- petition interest, attorneys fees and costs" in the bankruptcy proceeding.[35] Accordingly, GIS seeks summary judgment for $3,359,309.58 in damages plus an additional amount to be sought at trial.[36]

In anticipation of BEEOO's potential defenses, GIS argues that D&R was not a subcontractor.[37] GIS asserts that under Louisiana law, "a staffing service is an entity that hires and pays its own employees and assigns them to clients to support or supplement the client's workforce."[38] GIS avers that D&R merely supplied labor to GIS on an "as needed basis," and D&R was therefore, under Louisiana law, a staffing service and not a subcontractor.[39] For these reasons, GIS asserts that it is entitled to summary judgment on its breach of contract claim against BEEOO.[40]

## B.    *BEEOO's Arguments in Opposition to the Motion for Partial Summary Judgment*

In opposition, BEEOO argues that the Court should deny summary judgment for several reasons.[41] First, BEEOO asserts that GIS does not specifically identify which contractual terms were allegedly breached by BEEOO.[42] Second, BEEOO alleges that GIS cannot show that BEEOO

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at 7.

[38] *Id.* (citing La. R.S. 23:1761(9); La. R.S. 23:1601(1)(b)(ii)(a)).

[39] *Id.*

[40] *Id.* at 8.

[41] Rec. Doc. 133 at 2.

[42] *Id.*

ever approved the alleged invoices because GIS itself breached the Master Service Agreement ("MSA") and BAA by hiring unauthorized subcontractors.[43] Third, BEEOO avers that GIS has not alleged an accurate amount of damages before the Court because GIS is improperly seeking damages related to cases pending in other courts.[44]

BEEOO begins by arguing that "[n]otably absent from GIS's Motion, is any proof of the actual 'contract' between BEEOO and GIS which BEEOO breached causing GIS to incur unpaid invoices."[45] BEEOO contends that GIS attempts to argue that the parties' MSA does not apply to the litigation, and GIS fails to provide text from either the MSA or the BAA that includes the terms of the parties' alleged agreement.[46] BEEOO alleges that GIS' motion attempts to rely only on BEEOO's acceptance of GIS' work and course of dealing between the parties.[47] BEEOO insists that these assertions are insufficient and GIS cannot support its breach of contract claim without "present[ing] evidence establishing an actual contract for the work subject of the invoices at issue."[48]

Next, BEEOO proffers that GIS cannot seek damages for breach of contract when GIS itself breached the terms of the MSA by utilizing D&R workers as subcontractors.[49] BEEOO contends that though the MSA allowed for GIS to utilize subcontractors, the MSA terms required GIS to seek approval first.[50] BEEOO avers that GIS did not obtain BEEOO's approval for the use

---

[43] *Id.* at 10–11.

[44] *Id.* at 11.

[45] *Id.* at 6.

[46] *Id.* at 6–7.

[47] *Id.*

[48] *Id.* at 7.

[49] *Id.* at 10–11.

[50] *Id.* at 8–9.

of the D&R workers as subcontractors, and GIS' utilization of the workers constituted a breach of the MSA terms.[51] Therefore, BEEOO argues that it did not approve of GIS' invoices related to the D&R workers, and it does not owe GIS payment on these invoices.[52]

Finally, BEEOO avers that GIS does not provide evidence showing the amount of damages that GIS is seeking related to the invoices.[53] BEEOO alleges that in this litigation, GIS only listed $207,230.17 as damages in the complaint, and it is unclear what GIS' purported $3,300,000 figure includes.[54] BEEOO asserts that GIS could potentially be seeking to recover damages from other claims that GIS filed in other cases that are not part of this litigation.[55] If so, BEEOO contends that damages related to those cases are not properly before the Court, and thus, GIS' asserted amount of damages is unsupported by evidence to warrant a grant of summary judgment.[56] Accordingly, BEEOO requests that the court deny summary judgment on the breach of contract claim.[57]

### C.   *GIS' Arguments in Further Support of the Motion for Partial Summary Judgment*

In reply, GIS asserts that the Court should grant summary judgment on the breach of contract claim because no issues of fact exist regarding BEEOO's obligation to pay GIS for labor, materials, and third-party costs.[58] GIS alleges that BEEOO contests payment regarding the D&R workers that it classifies as subcontractors, but GIS insists that it is only seeking payment on undisputed amounts related to labor, materials, and third-party costs.[59] GIS asserts that the amount

---

[51] *Id.*

[52] *Id.* at 10–11.

[53] *Id.* at 11–12.

[54] *Id.* at 12.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 12–13.

[58] Rec. Doc. 141 at 1–2.

[59] *Id.* at 2.

7

of $3,353,309.58 is properly before the Court because this is the amount of GIS' claim in the bankruptcy proceeding, and the bankruptcy court entered an order on July 30, 2018 allowing "all parties to assert all claim and defenses to proceed through final judgment and appeal of Case 15-129."[60]

GIS argues that a contract clearly existed between the parties because the testimony of Cliff Bruno, BEEOO's trustee representative, establishes that an oral contract and course of dealing existed between the parties.[61] GIS avers that during Bruno's deposition, he acknowledged that GIS and BEEOO had an oral understanding that BEEOO would pay GIS for its services, and these understandings were memorialized via email.[62] GIS asserts that "when deposed, Mr. Bruno did not dispute the GIS labor, materials, or third-party costs. Thus, those charges have been approved. Failure to pay the undisputed amounts constitutes a breach of the agreement."[63] GIS also contends that it did not breach its obligations under the MSA because the D&R workers were not subcontractors.[64] For these reasons, GIS urges the Court to grant the motion for partial summary judgment.[65]

### III. Legal Standard

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[66] "[T]he substantive law will identify which facts are material."[67] A genuine issue of material fact

---

[60] *Id.* at 3 (quoting Rec. Doc. 141-1).

[61] *Id.* at 5.

[62] *Id.*

[63] *Id.* at 6.

[64] *Id.* at 8–9.

[65] *Id.* at 9.

[66] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[67] *Andersoin v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[68] The movant makes a showing that there is no genuine issue of material fact by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[69] In a case in which "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."[70]

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.[71] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[72] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[73] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.

---

[68] *Id.*

[69] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[70] *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

[71] *Celotex,* 477 U.S. at 324.

[72] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[73] *Little*, 37 F.3d at 1075.

## IV. Analysis

GIS initially filed this action against BEEOO under the Louisiana Oil Well Liens Act ("LOWLA").[74] GIS then amended the complaint to add a breach of contract claim against BEEOO.[75] Though GIS' second amended complaint includes claims under the LOWLA, in the instant motion, GIS only seeks summary judgment on the breach of contract claim.[76] GIS asserts that BEEOO breached the parties' contract by failing to pay GIS' invoices for $3,359,309.58 in goods and services.[77] BEEOO argues that issues of fact remain on what contract GIS alleges what was breached, whether GIS itself breached the contract, and whether the proper amount of damages is before the Court.[78] The Court will begin by analyzing whether GIS has asserted the existence of a valid contract.

Under Louisiana law, to assert a breach of contract claim, the plaintiff must show: "(1) the obligor undertook an obligation to perform; (2) the obligor failed to perform the obligation, resulting in a breach; and (3) the failure to perform resulted in damages to the obligee."[79] "[The] party who demands performance of an obligation must prove the existence of the obligation."[80]

In the motion, GIS asserts the existence of a contract based on the following allegations: "BEEOO and GIS entered into a valid and binding contract upon BEEOO's order and acceptance of

---

[74] Rec. Doc. 1-1 at 4.

[75] Rec. Doc. 16.

[76] Rec. Doc. 125-2 at 1.

[77] Rec. Doc. 125-2 at 1. GIS utilizes two different figures in its motion. First GIS asserts that "GIS has suffered damages in the amount of $3,599,556.76 for its invoices BEEOO has wrongfully refused to pay." *Id.* at 1. Then, GIS states that "GIS is entitled to at minimum, a payment of $3,359,309.58 for its invoices BEEOO has failed to pay." *Id.* at 4. Though it remains unclear which figure is the actual amount that GIS is seeking, the Court will utilize the figure of $3,359,309.58 because this is the amount that GIS alleged in its reply memorandum. Rec. Doc. 141 at 3.

[78] Rec. Doc. 105.

[79] *Sanga v. Perdomo*, 14-609 (La. App. 5 Cir. 12/30/14), 167 So. 3d 818, 822; *see* La. Civ. Code art. 1994; *Favrot v. Favrot*, 10–0986 (La. App. 4 Cir. 02/09/11), 68 So.3d 1099, 1109.

[80] La. Civ. Code Ann. art. 1831.

GIS's Work, as evidence [sic] by the Alliance Agreement and BEEOO's acceptance of GIS's invoices. BEEOO promised and expressly agreed to pay GIS for its Work, which is evident by BEEOO's approval of the invoices."[81] In the reply, GIS further supports its assertion by stating that "Mr. Bruno testified that an oral contract for GIS' services was entered into by Monte Richard on behalf of BEEOO and Dwayne McGlothin on behalf of GIS.… Along with the oral communications, the agreements were memorialized in writing *via inter alia,* e-mail."[82]

Based on GIS' assertions, it appears that GIS is contending that an oral contract existed between the parties, and that this oral contract was memorialized through email and course of dealing. Under Louisiana law, "[a]n oral contract for more than five hundred dollars may be proved by the testimony of 'one witness and other corroborating circumstances.'"[83] "While the plaintiff's own testimony can meet the one witness requirement, the corroborating circumstances 'must come from a source other than the plaintiff.'"[84] "The corroborating evidence need only be general in nature; each specific detail of the alleged contract does not need to be corroborated."[85] "The trier of fact has great latitude in what to accept as corroborating evidence."[86]

GIS attaches to its motion an affidavit from GIS' vice president, Bryan Pregeant.[87] In the affidavit, Pregeant states that GIS entered into a Master Service Agreement with Black Elk Entergy, LLC wherein GIS would provide materials and services to Black Elk Energy, LLC."[88]

---

[81] Rec. Doc. 125-2 at 8.

[82] Rec. Doc. 141 at 5 (emphasis in original).

[83] *Meredith v. La. Fed'n of Teachers*, 209 F.3d 398, 403 (5th Cir. 2000) (quoting La. Civ. Code Ann. art. 1846).

[84] *Id.* (quoting *Diversified Marine Servs., Inc. v. Jewel Marine, Inc.*, 222 So.3d 1008, 1014 (La. App. Cir. 2017)).

[85] *Kessler v. Popich*, 240 F. App'x 618, 621 (5th Cir. 2007) (citing *Gulf Container Repair Servs., Inc. v. FIC Bus. & Fin. Ctrs., Inc.,* 735 So.2d 41, 43 (La.Ct.App.1999)).

[86] *Worldwide Detective Agency, Inc. v. Cannon Cochran Mgmt. Servs., Inc.*, 502 F. App'x 408, 411 (5th Cir. 2012) (citing *B.M. Albrecht Elec., Inc. v. Griffin,* 413 So.2d 246, 247 (La.Ct.App.1982)).

[87] Rec. Doc. 125-3.

[88] *Id.* at 1.

Pregeant then alleges that GIS entered into a Business Alliance Agreement with BEEOO that "obliged GIS to treat BEEOO as a preferred customer and to provide services to BEEOO on a preferential basis, particularly during times when labor was in short supply."[89] GIS then submits the deposition testimony of Clifford Bruno, BEEOO's former Vice President of Operations.[90] GIS asserts that Bruno made the following statements during the deposition:

> The oral contract Monte Richard requested from Grand Isle Shipyard to provide a crew to perform work on West Delta 32 this is the scope of work to be performed can you provide that work and can you cover that work with the personnel as in accordance with the business alliance agreement the master services agreement the bridging agreement on the Grand Isle Shipyard's part of it they agreed to accept that work. They agreed to provide the personnel and equipment and to perform the work in accordance with the three written documents. That's what I am interpreting as an oral contract.[91]

Examining GIS' proffered evidence under the Louisiana standard for oral contracts, the Court finds that GIS has presented sufficient evidence to prove the existence of an oral contract between the parties. Pregeant serves as a witness to the agreement between the parties that GIS would supply labor and services to BEEOO and BEEOO would pay GIS for those services. BEEOO's corporate executive, Bruno, corroborates Pregeant's assertions by stating in his deposition that he understood that the parties' entered an oral contract for GIS to provide crew to perform work on the West Delta 32. Bruno also described the process that BEEOO would use to review GIS' invoices and approve payment for GIS' work.[92] Further, in a declaration that BEEOO attached to its opposition, Bruno states that GIS provided work to BEEOO from 2008 to 2014.[93]

---

[89] *Id.* at 1–2.

[90] Rec. Doc. 141-3.

[91] *Id.* at 7.

[92] *Id.* at 5–6.

[93] Rec. Doc. 133-1 at 2.

Therefore, the undisputed evidence establishes that the parties had a contract for GIS to provide services to BEEOO and for BEEOO to pay GIS for this labor in return.

The existence of an oral contract, however, is not enough to support judgment as a matter of law on GIS' breach of contract claim. The Fifth Circuit has made clear that when a plaintiff such as GIS moves for summary judgment on a claim, "the movant…must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor."[94] GIS does not meet this burden here. The oral contract that is evinced by Pregeant and Bruno's statements merely proves that the parties had a working relationship wherein GIS would perform services and BEEOO would pay for said services. However, both sides admit that GIS completed multiple work projects for BEEOO over the years. GIS is attempting to collect $3,359,309.58 in damages, an amount that is comprised of dozens of work projects which were initiated, completed, invoiced, and reviewed separately. Thus, GIS must prove a breach of contract with respect to each individual claim.

Viewed in this manner, GIS provides scant evidence in support of its motion that establishes the essential elements of any of its breach of contract claims. There is no description of each of the separate work projects, and no clear dates, project details, or invoice amounts attached to each work project. GIS merely attaches to the motion hundreds of pages of difficult-to-read documents that were filed in the bankruptcy proceeding as part of GIS' LOWLA claims in multiple, separate cases that are not all before this Court. Further, GIS does not provide any evidence in its motion that BEEOO approved any of the invoices that it claims it submitted to BEEOO. Therefore, GIS has not presented sufficient evidence to establish that BEEOO failed to perform the obligation or the amount of resulting damages. Because GIS does not establish beyond

---

[94] *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

peradventure *all* of the essential elements of any breach of contract claim,[95] summary judgment must be denied.

### V. Conclusion

For the foregoing reasons, GIS has not met its burden of establishing beyond peradventure *all* of the essential elements of its breach of contract claim. Accordingly, GIS is not entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Grand Isle Shipyard, Inc.'s "Motion for Partial Summary Judgment"[96] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 22nd day of July, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[95] *Id.*

[96] Rec. Doc. 125.