UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GRAND ISLE SHIPYARDS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 15-129** |
| **BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC** | **SECTION: "G" (5)** |

## ORDER AND REASONS

Before the Court is the Trustee of the Black Elk Liquidating Trust, Richard Schmidt's (hereinafter "BEEOO"),[1] "Motion for Partial Summary Judgment."[2] In this litigation, Plaintiff Grand Isle Shipyards, Inc. ("GIS") claims that Defendant BEEOO failed to pay GIS for goods and services connected to BEEOO's oil operations.[3] BEEOO filed the instant motion for partial summary judgment, arguing that the workers from D&R Resources, LLC that GIS used for its services on BEEOO's platform were borrowed employees of GIS.[4] In opposition, GIS argues that the issue of borrowed employees is not relevant to BEEOO's breach of contract claim and the Court has already ruled against this finding in prior litigation.[5] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] Though Richard Schmidt is the active Defendant in the case as the trustee of the Black Elk Liquidating Trust, the Court refers to Defendant as Black Elk Energy Offshore Operations, LLC ("BEEOO") for continuity between the briefings in the record.

[2] Rec. Doc. 122.

[3] Rec. Doc. 1-1 at 2.

[4] Rec. Doc. 122-1 at 1.

[5] Rec. Doc. 127.

1

# I. Background

## A. *Factual Background*

In the second amended complaint, GIS alleges that BEEOO breached the terms of the parties' agreement by failing to pay for services rendered.[6] GIS asserts that BEEOO contracted with GIS for GIS to provide goods and services in support of BEEOO's oil operations, but GIS contends that it never received payment for the services.[7] GIS avers that BEEOO is liable for breach of contract, bad faith breach of contract, and detrimental reliance.[8] GIS also seeks relief through quantum meruit, a well lien act claim under the Louisiana Oil Well Lien Act ("LOWLA") and a request for a writ of sequestration and judgment on BEEOO's property.[9]

## B. *Procedural Background*

On December 5, 2014, GIS filed a petition against BEEOO in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.[10] GIS asserted a claim under the Oil Well Lien Act.[11] On January 21, 2015, BEEOO removed the case to this Court, asserting diversity jurisdiction.[12] On March 17, 2015, BEEOO answered the petition and asserted a counterclaim against GIS.[13] In the counterclaim, BEEOO alleged that GIS engaged in fraud, breach of contract, breach of warranty, and negligence surrounding GIS' work on BEEOO's oil platform West Delta 32 ("West Delta 32").[14] On March 23, 2015, GIS amended the complaint to add claims for breach

---

[6] Rec. Doc. 20 at 2–3.

[7] *Id.* at 3.

[8] *Id.* at 4–5.

[9] *Id.* at 3–4.

[10] Rec. Doc. 1-1.

[11] *Id.*

[12] Rec. Doc. 1.

[13] Rec. Doc. 14.

[14] *Id.*

of contract, bad faith breach of contract, detrimental reliance, and quantum meruit.[15] On June 3, 2015, GIS filed a second amended complaint, removing several of the properties for which it alleged claims.[16]

On August 11, 2015, certain creditors of BEEOO filed an involuntary petition for relief under Title 11 of the United States Code against BEEOO in the United States Bankruptcy Court for the Southern District of Texas.[17] On August 19, 2015, this Court issued an order staying and administratively closing the case in light of the automatic bankruptcy stay.[18] On July 13, 2016, the bankruptcy court issued an order confirming the liquidation plan regarding BEEOO and appointing Richard Schmidt as the liquidation trustee.[19] On May 10, 2018, this Court reopened the case and substituted Trustee Richard Schmidt in the place of BEEOO.[20]

At a December 19, 2018 oral argument on GIS' motion to dismiss, BEEOO admitted that its fraud and negligence claims were prescribed under Louisiana law.[21] Accordingly, on December 26, 2018, the Court dismissed BEEOO's fraud and negligence claims.[22] On May 21, 2019, BEEOO filed the instant motion for partial summary judgment.[23] On May 28, 2019, GIS filed an

---

[15] Rec. Doc. 16.

[16] Rec. Doc. 20.

[17] *See* Rec. Doc. 29-2.

[18] Rec. Doc. 32.

[19] Rec. Doc. 34-1 at 23–24, 26–27.

[20] Rec. Doc. 42. Though Richard Schmidt is the active Defendant in the case, the Court refers to Defendant as BEEOO for continuity between the briefings.

[21] Rec. Doc. 70 at 1.

[22] *Id.* at 1–2.

[23] Rec. Doc. 122.

opposition.²⁴ With leave of Court, BEEOO filed a reply in further support of the motion on June 4, 2019.²⁵

## II. Parties' Arguments

### A. *BEEOO's Arguments in Support of the Motion for Partial Summary Judgment*

BEEOO requests that the Court rule that the D&R Resources, LLC ("D&R") workers used by GIS on the West Delta 32 can be legally classified as borrowed employees of GIS.²⁶ BEEOO begins by contending that during litigation in *Tajonera v. Black Elk Energy Offshore Operations, LLC*,²⁷ GIS submitted a motion arguing that the workers GIS obtained from D&R were borrowed employees.²⁸ BEEOO alleges that GIS listed multiple factual allegations in support of its argument that the D&R workers were borrowed employees of GIS.²⁹ BEEOO avers that it does not dispute the facts that GIS pled in the *Tajonera* litigation regarding the D&R workers, and BEEOO now asserts that applying the Fifth Circuit's borrowed employee test in *Ruiz v. Shell Oil Co.*,³⁰ to these undisputed facts, the nine factors weigh in favor of a finding that the D&R workers were borrowed employees.³¹

BEEOO contends that under *Ruiz*, "[t]he factor of control is perhaps the most universally accepted standard for establishing an employer-employee relationship."³² BEEOO insists that the D&R workers were under the control of GIS because they took orders from GIS' personnel,

---

²⁴ Rec. Doc. 127.

²⁵ Rec. Doc. 136.

²⁶ Rec. Doc. 122-1 at 1.

²⁷ Civil Action No. 13-366.

²⁸ Rec. Doc. 122-1 at 1–2.

²⁹ *Id.* at 2.

³⁰ 413 F.2d 310, 312-13 (5th Cir. 1969).

³¹ *Id.*

³² *Id.* at 4 (quoting *Perron v. Bell Maint. and Fabricators, Inc*., 970 F.2d 1409, 1412 (5th Cir. 1992)).

4

including GIS' supervisor Curtis Dantin, and D&R did not supervise the day-to-day activities of the D&R workers.[33] Next, though the contractual agreement between D&R and GIS states that the D&R workers were independent contractors, in *Melancon v. Amoco Prod. Co.*,[34] the Fifth Circuit held that the course of conduct controls.[35] Based on this, BEEOO asserts that it is uncontested that the D&R workers were doing the work of GIS, and this course of conduct establishes that D&R and GIS understood that the D&R workers were borrowed employees.[36] BEEOO contends that day-to-day control of GIS over the D&R workers established that "D&R terminated its relationship with the employees."[37]

Regarding the factor of whether the D&R workers acquiesced in the new work situation, BEEOO states that the D&R workers did not have a prior work arrangement because they traveled directly from the Philippines, and there is no evidence that did not consent to the arrangement with GIS.[38] In support of the factor of who furnished the tools for performance, BEEOO argues that even if the D&R workers supplied coveralls and small tools that they used for work, GIS provided the other tools, food, and lodging, and this is sufficient under Fifth Circuit case law.[39] On the factor of length of employment, BEEOO contends that the Court previously found this factor was neutral because the D&R workers only worked on the West Delta 32 for one week prior to the incident.[40]

---

[33] *Id.* at 5.

[34] 834 F.2d 1238, 1244 (5th Cir. 1988).

[35] Rec. Doc. 122-1 at 6.

[36] *Id.*

[37] *Id.* at 7.

[38] *Id.*.

[39] *Id.* at 8.

[40] *Id.*

5

BEEOO alleges, however, that the parties "agree that the D&R workers' employment for GIS was for a much longer time period."[41]

On the factor of who had the right to terminate the employee, BEEOO proffers that "the Court must determine whether the borrowing employer had the right to terminate its relationship with the borrowed employee."[42] BEEOO claims that "it is clear" that GIS could remove a D&R worker from the job if GIS was unsatisfied with the work.[43] Likewise, regarding who had the obligation to pay the employee, BEEOO asserts that regardless of D&R's role in disbursing payroll funds to the workers, GIS was responsible for determining the number of hours each D&R employee worked, the number of overtime hours allowed, and the ultimate payment on these hours.[44] Taking the nine factors together, BEEOO argues that they weigh in favor of borrowed employee status.[45] Accordingly, BEEOO urges the Court to rule that the D&R workers used by GIS on the West Delta 32 were borrowed employees of GIS.[46]

## B. *GIS' Arguments in Opposition to the Motion for Partial Summary Judgment*

In opposition, GIS argues that the Court should deny the motion because the issue of whether the D&R workers were GIS' borrowed employees is irrelevant to BEEOO recovering on its breach of contract claim.[47] GIS contends that vicarious liability is only relevant to tort claims, but BEEOO's tort claims were already dismissed by the Court as prescribed.[48] GIS asserts that

---

[41] *Id.*

[42] *Id.* at 8–9.

[43] *Id.* at 9.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 9.

[47] Rec. Doc. 127 at 1.

[48] *Id.* at 3.

BEEOO conflates tort and contract claims, and in *Babin v. Quality Energy Services*,[49] the Fifth Circuit cautioned courts that they "must scrutinize tort claims masquerading as contract claims, especially where a litigant seeks to avoid prescription."[50] GIS avers that *Babin* applies here and the Court should not rule on an issue that is not part of BEEOO's contract claim.[51] Nevertheless, GIS argues that even if the D&R workers were borrowed employees of GIS, "D&R can still be responsible for the fault of its employees."[52]

GIS also argues that, as BEEOO notes, the Court already considered the issue of borrowed employee status as part of GIS' motion for summary judgment in the *Tajonera* case.[53] GIS alleges that in opposition to that motion, BEEOO argued that issues of fact existed regarding the issue of borrowed employee status.[54] According to GIS, the Court reviewed the evidence and found that, as BEEOO and other parties argued, there were disputed issues of material fact on factors 1, 3, 5, 8, and 9 of the *Ruiz* factors.[55] GIS avers that BEEOO has now changed its position and wants to argue that there are no disputed issues of fact on the *Ruiz* factors.[56] However, GIS asserts that "BEEOO offers no additional evidence in connection with its prior denials, other than for its convenience it has now changed its position. BEEOO offers nothing new in what is really a request

---

[49] 877 F.3d 621 (5th Cir. 2017).

[50] Rec. Doc. 127 at 3 (citing *Babin*, 877 F.3d at 625).

[51] *Id.*

[52] *Id.* at 4 (citing *Washington v. Fieldwood Energy, LLC*, 2018 U.S. Dist. LEXIS 63, *11-12, E.D. La. 2018).

[53] *Id.* at 2.

[54] *Id.*

[55] *Id.* at 2.

[56] *Id.* at 3.

for the Court to reconsider its previous denial of GIS' Motion for Summary Judgment."[57] Therefore, GIS urges the Court to deny BEEOO's motion for partial summary judgment.[58]

### C. *BEEOO's Arguments in Further Support of the Motion for Partial Summary Judgment*

In reply, BEEOO urges the Court to grant the motion because the issue of borrowed employee status is both "relevant and undisputed."[59] BEEOO insists that the issue of borrowed employee status is part of proving vicarious liability of an employer, and vicarious liability is not a concept that is limited to tort claims.[60] BEEOO asserts that vicarious liability is relevant to its breach of contract claim because GIS will blame D&R workers for any breach of contract, and BEEOO believes that if the Court declares that GIS is vicariously liable for the D&R workers, this asserted defense will fail.[61] Ultimately, BEEOO desires to prove that GIS is liable for any acts of its borrowed D&R workers that may have contributed to breach of contract.[62]

BEEOO also argues that the issue of borrowed employee status is undisputed in this case and that is all that matters to the Court's decision.[63] BEEOO asserts that in the *Tajonera* litigation, it merely filed a "me too" memo in opposition to GIS' motion for summary judgment, and BEEOO did not offer any facts or legal arguments of its own in opposition to GIS' borrowed servant's argument.[64] BEEOO also alleges that it filed its opposition before it had completed discovery, and by the end of discovery, it no longer had any facts to contest GIS' assertion that the D&R workers were borrowed employees.[65]

---

[57] *Id.*

[58] *Id.* at 1.

[59] Rec. Doc. 136 at 1.

[60] *Id.* at 2.

[61] *Id.*

[62] *Id.*

[63] *Id.* at 1–2.

[64] *Id.* at 3.

[65] *Id.*

8

BEEOO now highlights that "there are no longer any parties in [this case] who contend that the D&R workers were not the borrowed servants of GIS," and GIS has not presented any facts in its opposition that dispute this issue.[66] For these reasons, BEEOO requests that the Court rule that the D&R workers used by GIS on the West Delta 32 were borrowed employees.[67]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[68] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[69] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[70] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[71] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[72]

---

[66] *Id.* at 1 n.1.

[67] *Id.* at 4.

[68] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[69] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[70] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[71] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[72] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[73] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[74] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[75] In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[76]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[77] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn

---

[73] *Celotex*, 477 U.S. at 323.

[74] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[75] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[76] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[77] *Little*, 37 F.3d at 1075.

documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[78]

### IV. Analysis

BEEOO urges the Court to rule that the D&R workers were GIS' borrowed employees.[79] GIS argues that the Court should deny the motion because the issue is irrelevant to BEEOO recovering on its breach of contract claim.[80] BEEOO, however, insists that the issue of borrowed employee status is relevant because it "anticipates that as part of GIS' defense, it will be blaming other parties for the damages sustained by Black Elk."[81] BEEOO likens the issue of borrowed employee status in this litigation to the issue that arose in the *Tajonera* litigation.[82]

However, the Court finds that unlike in the *Tajonera* litigation, the issue of borrowed employee status is not properly before the Court in this matter. In the *Tajonera* litigation, GIS specifically raised the defense of borrowed employee status in its answers to several of the negligence claims filed in that litigation.[83] Additionally, in *Tajonera*, GIS filed a motion for summary judgment specifically requesting that the Court rule upon its asserted defense of borrowed employee status.[84] Conversely, in this litigation, the record does not reflect that GIS has asserted a borrowed employee defense in any of the pleadings or briefings.[85] Under Louisiana law, tort immunity under the borrowed employee doctrine is an affirmative defense that must be

---

[78] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[79] Rec. Doc. 122-1 at 1.

[80] Rec. Doc. 127 at 1.

[81] Rec. Doc. 136 at 2.

[82] *Id.* at 3–4.

[83] *See, e.g.,* Civil Action No. 13-366, Rec. Docs. 300, 301, 308.

[84] Civil Action No. 13-366, Rec. Doc. 394.

[85] *See, e.g.,* Rec. Docs. 14, 20.

pleaded and proven by the party asserting the defense.[86] There is no longer a pending negligence claim against GIS, and GIS is directly asserting that it does not consider the issue of borrowed employee status to be relevant to the claims that remain in the litigation—breach of contract and breach of warranty.[87] Therefore, it appears that in this matter, GIS is neither asserting the defense of borrowed employee status nor espousing the argument that such a defense will be applicable to BEEOO's breach of contract claims.

Despite these assertions by GIS, BEEOO insists that as part of GIS' defense, GIS may attempt to blame other parties, such as the GIS workers, for the alleged breach of contract.[88] Therefore, BEEOO urges the Court to decide the issue in advance of trial because doing so would preempt GIS' ability to place liability on the D&R workers. The Court declines BEEOO's request for several reasons. First, BEEOO is engaging in guess work when it "anticipates" that GIS may raise an argument that the D&R workers' status precludes a finding of breach of contract. GIS directly contends that the issue of borrowed employee status is not at issue in the current litigation, and BEEOO's anticipation does not actually place the issue before the Court. Where an issue is not raised, federal courts do not render advisory opinions.[89] If the issue of borrowed employee status is actually raised as a defense by GIS, the Court may address the matter at that time.[90]

Second, BEEOO does not cite any case law for its assertion that the borrowed employee defense, as analyzed under *Ruiz*, is applicable in this litigation. The issue of borrowed employee

---

[86] *Billeaud v. Poledore*, 603 So. 2d 754, 755 (La. App. 5 Cir. 1992) (citing *Brumbaugh v. Marathon Oil Co*., 507 So.2d 872, 874–75 (La. App. 5 Cir.), *writ denied*, 508 So. 2d 824 (La. 1987)).

[87] Rec. Doc. 127 at 1–2.

[88] Rec. Doc. 141 at 2.

[89] "[A] federal court has neither the power to render advisory opinions nor "to decide questions that cannot affect the rights of litigants in the case before them." *John Doe #1 v. Veneman*, 380 F.3d 807, 814 (5th Cir. 2004) (*Preiser v. Newkirk,* 422 U.S. 395, 401 (1975)).

[90] The Court does not herein address whether a borrowed employee defense will be timely if raised at a later point in the litigation.

status was applicable in the *Tajonera* litigation in the context of claims that were rooted in GIS' negligence. Here, BEEOO's negligence claim has prescribed and it is unclear that GIS will be able to utilize the borrowed employee defense in response to a breach of contract claim. Therefore, in addition to the lack of an actual issue before the Court, the Court will not engage in analysis that may be inapplicable to the facts at hand.

## V. Conclusion

For the foregoing reasons, the Court finds that the issue of borrowed employee status is not properly before the Court at this time, and the Court will not issue an advisory opinion. Accordingly,

**IT IS HEREBY ORDERED** that Trustee Richard Schmidt's "Motion for Partial Summary Judgment."[91] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __22nd__ day of July, 2019.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[91] Rec. Doc. 122.