UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GRAND ISLE SHIPYARDS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-129**<br>**C/W 15-154; 15-153;**<br>**15-905; 19-11825;**<br>**19-11826; 19-11827** |
| **BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC** | **SECTION D (5)** |

### ORDER

Before the Court is Black Elk Energy Offshore Operations, LLC's Motion *in Limine* to Exclude GIS's Expert, Chuck Schoennagel.[1] The Motion is fully briefed.[2] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court grants the Motion in part.

I.  BACKGROUND

Grand Isle Shipyards, Inc. ("GIS") alleges that Black Elk Energy Offshore Operations, LLC ("BEEOO"),[3] breached an agreement between the parties to pay for services rendered in connection with BEEOO's drilling and production operations on various oil and gas wells.[4] BEEOO filed an Answer and Counterclaim, alleging that

---

[1] R. Doc. 137.
[2] R. Doc. 148 (Response in Opposition); R. Doc. 164 (Reply).
[3] The Court recognizes that the Honorable Richard Schmidt (Ret.), as BEEOO's liquidating trustee, is the proper party to this litigation. *See* R. Doc. 42. For ease of reference and consistency, the Court refers to this party as BEEOO.
[4] *See generally* R. Doc. 20 (Second Amended Complaint). GIS also brought a series of other claims, including claims under the Louisiana Oil Well Lien Act. *See id*.

GIS's work on Black Elk's West Delta 32 oil platform resulted in millions of dollars damages to BEEOO.[5]  Specifically, BEEOO alleges that GIS is responsible for an explosion that took place at the West Delta 32 platform on November 16, 2012.[6]  That explosion has been the subject of extensive litigation in this district, including *Tajonera v. Black Elk Energy Offshore Operations, LLC*,[7] *United States v. Black Elk Energy Offshore Operations, LLC*,[8] *United States v. Don Moss*,[9] and *United States v. Chris Srubar*.[10]  BEEOO's tort and fraud claims have been dismissed as prescribed, but it continues to assert a breach of contract claim.[11]

Following the 2012 explosion, the Bureau of Safety and Environmental Enforcement ("BSEE") conducted an investigation and issued a report in which it made various factual findings and legal conclusions regarding violations of regulations promulgated under the Outer Continental Shelf Lands Act ("OCSLA").[12] BEEOO seeks recovery of some of the fees associated with this investigation.[13]

GIS seeks to introduce the expert testimony of Chuck Schoennagel, a former employee of Minerals Management Service. Schoennagel is presumably offered as an expert on the regulations at issue on offshore platforms such as the West Delta 32 oil platform and how such regulations are enforced. Schoennagel has produced an expert report in this case in which he discusses the background and role of the Bureau of

---

[5] *See generally* R. Doc. 76 (Answer and First Amended and Supplemental Counterclaim).
[6] *See id.* at 10 ¶ 16.
[7] Civil Docket No. 13-366.
[8] Criminal Docket No. 15-197-1.
[9] Criminal Docket No. 15-197-2.
[10] Criminal Docket No. 15-197-6.
[11] R. Doc. 70; R. Doc. 76.
[12] *See* R. Doc. 206-1.
[13] *See* R. Doc. 76 at 11 ¶ 17(a), (l).

Safety and Environmental Enforcement and BEEOO's factual basis provided to the court in the *United States v. Black Elk Energy Offshore Operations, LLC* criminal matter.[14] Schoennagel offers a series of opinions regarding regulatory enforcement against BEEOO, including that BEEOO's history of Incidents of Noncompliance (INCs), resulted in stricter regulatory enforcement than would otherwise have taken place.[15]

BEEOO now moves to exclude Schoennagel's testimony and report.[16] While BEEOO does not dispute Schoennagel's expert qualifications in its Motion, BEEOO argues that Schoennagel intrudes on the role of the Court in opining about regulatory standards. BEEOO also contends that Schoennagel's opinions regarding whether BEEOO violated a relevant regulation are irrelevant in this breach of contract action. BEEOO further argues that Schoennagel's opinions are cumulative with Keith King's testimony, the lead BSEE investigator, and the BSEE report, and that Schoennagel's discussion of Black Elk's factual basis in *United States v. Black Elk Energy Offshore Operations, LLC* is unhelpful and inappropriate.

In its Opposition,[17] GIS argues that the safeguards of *Daubert* are relaxed in a bench trial, and further emphasizes Schoennagel's qualifications. GIS also argues that it puts forth Schoennagel's testimony regarding BEEOO's higher than industry average of INCs to demonstrate that some of the consequences of the investigation for which BEEOO seeks damages, including costs incurred by BEEOO's consultant,

---

[14] *See generally* R. Doc. 137-2.
[15] *See id.* at 8-9.
[16] R. Doc. 137.
[17] R. Doc. 148.

ABSG Consulting ("ABSG"), are not recoverable because they were not a foreseeable consequence of a breach of contract. BEEOO has filed a Reply[18] in which it argues that it does not claim damages for its bankruptcy or the "shut-in" and therefore Schoennagel's testimony regarding BEEOO's history of higher-than-industry-average INCs is irrelevant, as are Schoennagel's opinions relative to BEEOO's subsequent bankruptcy. BEEOO also emphasizes that Schoennagel does not mention ABSG in his report.

## II.  LEGAL STANDARD

When expert testimony is challenged, the party seeking to present the testimony has the burden of proving, by a preponderance of the evidence, that the testimony satisfies Federal Rule of Evidence 702.[19] Rule 702, which governs the admissibility of expert testimony,[20] provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) The testimony is based on sufficient facts or data;
>> (c) The testimony is the product of reliable principles and methods; and
>> (d) The expert has reliably applied the principles and methods to the facts of the case.[21]

---

[18] R. Doc. 164.
[19] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[20] *In re Chinese Manufactured Drywall Products Liability Litigation*, No. 09-6687, 2010 WL 8368083, at *2 (E.D. La. Feb. 17, 2010).
[21] Fed. R. Evid. 702.

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[22] and *Kumho Tire Co. v. Carmichael*.[23] The threshold inquiry in determining whether an individual may offer expert testimony under Rule 702 is whether the individual possesses the requisite qualifications to render an opinion on a particular subject matter.[24] After defining the permissible scope of the expert's testimony, the court must determine whether the opinions are reliable and relevant before they can be admitted.[25] The purpose of *Daubert* is "to ensure that only reliable and relevant expert testimony is presented to the jury."[26]

As correctly pointed out by GIS, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."[27] "[A] judge in a bench trial should have discretion to admit questionable technical evidence, although of course he must not give it more weight than it deserves."[28] That said, although district courts retain latitude to determine how to apply the *Daubert* requirements in a bench trial, a court may not "sidestep[] Rule 702 altogether and decline[] to perform any assessment of [expert] testimony before trial."[29]

---

[22] 509 U.S. 579 (1993).
[23] 526 U.S. 137 (1999).
[24] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011).
[25] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citing *Daubert*, 509 U.S. at 592-93.
[26] *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999) (superseded by statute on other grounds) (citing *Daubert*, 509 U.S. at 590-93).
[27] *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).
[28] *SmithKline Beecham Corp v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003).
[29] *UgI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833 (3rd Cir. 2020).

### III. ANALYSIS

BEEOO's primary objection to Schoennagel's testimony is that it invades the role of the Court in analyzing regulations and their purpose and history. "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."[30] It is inappropriate to allow an expert to opine on legal conclusions, even in a bench trial.[31] Accordingly, to the extent Schoennagel attempts to offer conclusions as to what law is applicable, his testimony will be excluded. The Court further notes that Schoennagel offers a number of conclusions related to Black Elk's operations on West Delta 32, the gist of which is that BEEOO violated the applicable regulations.[32] These too are legal conclusions, and are rightfully excluded.[33] The Court has separately excluded evidence of INCs related to the November 16, 2012 explosion, and shall not permit them into evidence through Schoennagel's testimony. Indeed, the Court notes that in its Opposition, GIS does not even make arguments regarding the relevance of this testimony.

---

[30] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).
[31] *See, e.g.*, *Smith v. City of Bastrop*, No. 19-1054, 2021 WL 148061, at *5 (W.D. Tex. Jan. 15, 2021) ("Even in bench trials where a court will not be acting as a 'gatekeeper' for the jury, testimony will be excluded before trial if an expert merely provides legal opinions.").
[32] *See* R. Doc. 137-2 at 10 ("It is also my opinion that operations on the West Delta Block 32, Platform E facility were not conducted in a safe and workmanlike manner as evidenced by Black Elk's admissions in connection with its criminal plea, which include the admission that the Black Elk employee who made the decision to weld piping instead of bolting the piping in place 'did not effectively communicate' with Black Elk's contracts and the platform's Person In Charge, Chris Srubar, and which include the admission that Black Elk failed to coordinate activities on West Delta 32 at the time of the accident that occurred on November 16, 2012 . . . As a result of the accident and subsequent investigation by BSEE, 12 INCs were issued by BSEE concerning the activities that occurred prior to and subsequent to the accident."); *see also id.* at 11-12 (further discussing regulations and BEEOO's purported violation thereof).
[33] *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (holding that testimony which is legal opinion is inadmissible).

Accordingly, Schoennagel's opinions about the applicable regulations and violations thereof relating to the November 16, 2012 explosion are similarly excluded.

The Court further finds that Schoennagel's discussion of BEEOO's factual basis in its criminal matter is inappropriate.[34] The factual basis speaks for itself, and the Court need not rely on expert testimony to understand and apply the factual basis in a related criminal matter, nor would such testimony assist the Court as the trier of fact. Accordingly, the Court also excludes Schoennagel's discussion of the factual basis used in BEEOO's criminal prosecution.

There is, however, at least one portion of Schoennagel's testimony that does not reach a legal conclusion and is relevant. Schoennagel testifies that:

> In my opinion, Black Elk's prior history of an unusually high number of INCs for an operator over the course of a two year eight month period before the November 16, 2012 incident was a reason for the Performance Improvement Plan and the shut-in order. In my opinion, the financial requirements placed on the lessee to have and maintain a lease on the OCS as well as the inspection and enforcement requirements placed on the lessee to operate a lease on the OCS clearly show that the DOI/BSEE consider the operators to be responsible for the activities conducted on a lease in the OCS.[35]

GIS argues this testimony is relevant because BEEOO claims significant damages related to ABSG Consulting, costs which GIS contends would not have been incurred had BEEOO not had a substantial history of receiving INCs from BSEE. GIS therefore argues that such costs are not a direct or foreseeable consequence of a breach of contract.

---

[34] *See* R. Doc. 137-2 at 5-6, 12.
[35] R. Doc. 137-2 at 9.

BEEOO objects to this testimony as irrelevant. Specifically, it argues that it has not claimed costs related to downtime damages, the bankruptcy, or economic damages associated with the shut-in. BEEOO does acknowledge that it has claimed costs related to ABSG, but further argues that Schoennagel does not mention ABSG by name in his report. GIS represents that ABSG's work was connected to the Performance Improvement Plan (and thus the shut-in order).[36] Schoennagel specifically offers his expert opinion about the Performance Improvement Plan, and opines that it was related to BEEOO's INC history. Accordingly, his testimony may be some evidence that BEEOO is not owed for some or all of ABSG's consulting fees. The Court therefore finds this opinion relevant and will not exclude this portion of Schoennagel's report or his testimony as to these opinions.[37]

Finally, BEEOO objects to Schoennagel's testimony in that it will be cumulative with that of Keith King, the BSEE investigator. The Court rejects this argument. Although there may be some overlap between the testimony of Schoennagel and King, King is certainly not being put forth "to give expert opinion testimony on the connection between BEEOO's high-than-industry-average track record of INCs . . . and the regulatory actions taken by BSEE after the incident."[38] Further, this Court's partial exclusion of Schoennagel's testimony will reduce much of the overlap King and Schoennagel otherwise would have had.

---

[36] See R. Doc. 148 at 4 ("ABSG Consulting was also conscripted to assist in the Performance Improvement Plan by BSEE.")

[37] The Court notes that there is a pending Motion in which GIS argues that BEEOO may not seek ABSG's fees as a matter of law. See R. Doc. 247. The Court's ruling on that Motion may alter this analysis, as if BEEOO may not seek such fees, this portion of Schoennagel's testimony may lack relevance.

[38] R. Doc. 148 at 3.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that BEEOO's Motion *In Limine* is **GRANTED IN PART**.

New Orleans, Louisiana, February 12, 2021.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**