UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


**GRAND ISLE SHIPYARDS, INC.**                          **CIVIL ACTION**

**VERSUS**                                              **NO. 15-129**
                                                        **C/W 15-154; 15-153;**
                                                        **15-905; 19-11825;**
                                                        **19-11826; 19-11827**


**BLACK ELK ENERGY OFFSHORE**                           **SECTION D (5)**
**OPERATIONS, LLC**


**ORDER**

Before the Court is Grand Isle Shipyards, Inc.'s Motion for Partial Summary Judgment on Damages.[1]  The Motion is fully briefed.[2]  Also before the Court is Black Elk Energy Offshore Operations' Motion for Partial Summary Judgment Regarding Recovery of Unpaid Invoices,[3] to which Grand Isle Shipyards has filed a Response in Opposition.[4]  Also before the Court is Grand Isle Shipyards, Inc.'s Motion *in Limine* to Exclude Summary Evidence Under Federal Rule of Evidence 1006.[5]  That Motion is also fully briefed.[6]  After careful consideration of the parties' memoranda, the record, and the applicable law, the Court grants in part and denies in part Grand Isle Shipyards, Inc.'s Motion for Partial Summary Judgment on Damages, grants in part

---

[1] R. Doc. 237.
[2] R. Doc. 242 (Response in Opposition); R. Doc. 245 (Reply).
[3] R. Doc. 229.
[4] R. Doc. 233.
[5] R. Doc. 180.
[6] R. Doc. 204 (Response in Opposition); R. Doc. 224 (Reply).

and denies in part Black Elk Energy Offshore Operations' Motion for Partial Summary Judgment Regarding Recovery of Unpaid Invoices, and denies Grand Isle Shipyards' Motion *in Limine* to Exclude Summary Evidence Under Federal Rule of Evidence 1006.

## I.   BACKGROUND

Grand Isle Shipyards, Inc. ("GIS") alleges that Black Elk Energy Offshore Operations, LLC ("BEEOO"),[7] breached an agreement between the parties to pay for services rendered in connection with BEEOO's drilling and production operations on various oil and gas wells.[8]  BEEOO filed an Answer and Counterclaim, alleging that GIS's work on Black Elk's West Delta 32 oil platform resulted in millions of dollars in damages to BEEOO.[9]  Specifically, BEEOO alleges that GIS is responsible for an explosion that took place at the West Delta 32 platform on November 16, 2012.[10]  That explosion has been the subject of extensive litigation in this district, including *Tajonera v. Black Elk Energy Offshore Operations, LLC*,[11] *United States v. Black Elk Energy Offshore Operations, LLC,*[12] *United States v. Don Moss*,[13] and *United States*

---

[7] The Court recognizes that the Honorable Richard Schmidt (Ret.), as BEEOO's liquidating trustee, is the proper party to this litigation.  *See* R. Doc. 42.  For ease of reference and consistency, the Court refers to this party as BEEOO.

[8] *See generally* R. Doc. 20 (Second Amended Complaint).  GIS also brought a series of other claims, including claims under the Louisiana Oil Well Lien Act.  *See id.*

[9] *See generally* R. Doc. 76 (Answer and First Amended and Supplemental Counterclaim).

[10] *See id.* at 10 ¶ 16.

[11] Civil Docket No. 13-366.

[12] Criminal Docket No. 15-197-1.

[13] Criminal Docket No. 15-197-2.

*v. Chris Srubar*.[14] BEEOO's tort and fraud claims have been dismissed as prescribed, but it continues to assert a breach of contract claim.[15]

BEEEOO seeks millions in damages as a result of the explosion, at least some of which are related to work performed by vendors on the West Delta 32 platform after the explosion. These costs were originally traced through BEEEOO's Authorization for Expenditure ("AFE") process. The costs have been summarized by BEEEOO's damage expert, Rodney Winkler. It is undisputed that BEEOO no longer has certain "Daily Construction Reports" for certain expenditures. It is also undisputed that BEEEOO lacks evidence of payment for certain expenditures to vendors.[16]

In its Motion for Partial Summary Judgment,[17] GIS argues that BEEOO cannot claim damages for invoices which have not been paid under the Louisiana Civil Code. GIS contends that this is because BEEOO has not "sustained" damages under Louisiana Civil Code article 1995 if it has not paid an invoice. GIS further argues that the amounts paid by BEEOO's insurers were also not "sustained" by BEEOO and therefore cannot be recovered because the collateral source rule is inapplicable in this breach of contract action. GIS also argues that BEEOO lacks evidence—specifically, Daily Construction Reports—to prove that particular invoices are related to repairs that resulted from the explosion. GIS avers that without

---

[14] Criminal Docket No. 15-197-6.
[15] R. Doc. 70; R. Doc. 76.
[16] *See* R. Doc. 229-1 at 6.
[17] R. Doc. 237.

additional evidence, BEEOO cannot prove up much of its claim.  GIS makes similar arguments in its Opposition to BEEOO's cross-Motion.[18]

In its Motion for Partial Summary Judgment,[19] BEEOO argues that neither the Louisiana Civil Code nor the relevant caselaw requires an injured party to prove payment to recover damages.  BEEOO contends that GIS understands the term "sustained" in the Louisiana Civil Code too narrowly, and that BEEOO sustained harm as soon as its property was damaged.  It further argues that GIS's arguments regarding payment ignore BEEOO's bankruptcy.  BEEOO also contends that the collateral source rule applies in this breach of contract action, as Louisiana caselaw does not limit the rule to tort claims.  With respect to GIS's argument regarding sufficiency of the evidence, BEEOO argues that the law requires only that it present the "best evidence" of its claim, and that GIS is attempting to hold BEEOO to an impossible evidentiary standard.  BEEOO recognizes that it has the burden of proving its claims at trial, but contends that summary judgment on this issue is inappropriate.  BEEOO makes similar arguments in its Opposition to GIS's cross-Motion.[20]  In its Reply,[21] GIS reiterates many of the arguments it made elsewhere. It also argues that BEEOO fails to properly contest certain assertions in GIS's Local Rule 56.1 Statement of Contested/Uncontested Facts, and therefore those assertions must be deemed admitted.  Specifically, GIS alleges that Uncontested Fact Nos. 1-26 have not properly been disputed and therefore must be deemed admitted.

---

[18] R. Doc. 233.
[19] R. Doc. 229.
[20] R. Doc. 242.
[21] R. Doc. 245.

GIS has also filed a related Motion *in Limine*,[22] arguing that BEEOO's claim summary is unreliable because BEEOO has failed to produce sufficient documentary evidence to support the claim summary. GIS stresses that BEEOO was ordered to produce the Daily Construction Reports[23] and failed to do so. It further argues that evidence of payment is missing. GIS cites to the case *Underwriters at Lloyd's London v. OSCA, Inc.*[24] to argue that BEEOO's claim summary is inadequate under Federal Rule of Evidence 1006.

BEEOO has filed an Opposition[25] in which it argues that GIS's Motion *in Limine* is an inappropriate and untimely attack on BEEOO's expert, Rodney Winkler. BEEOO argues that the only requirements of Federal Rule of Evidence 1006 are that the records at issue be voluminous and in-court examination be inconvenient—two requirements BEEOO contends are clearly met here. BEEOO further argues that it will support its claim not only with documentary evidence, but also with testimony.

In its Reply,[26] GIS argues that BEEOO's claim summary is more than a compilation and that it fills in gaps in BEEOO's claims. GIS further argues that the Daily Construction Reports, which BEEOO has admitted it does not have, are necessary to prove that BEEEOO's damages were necessary and reasonable.

---

[22] R. Doc. 180.
[23] *See* R. Doc. 180-5 at 3-4.
[24] 2006 WL 941796 (5th Cir. Apr. 12, 2006).
[25] R. Doc. 204.
[26] R. Doc. 224.

## II.     LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[27]  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[28]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[29]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[30]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[31]  The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[32]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue,

---

[27] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[28] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[29] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[30] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248).

[31] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[32] *Id*. at 1265.

the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[33]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[34]

### III.   ANALYSIS

#### A.   Requirement of Payment

The Court first considers whether BEEOO must have paid a given invoice to recover damages for the amounts charged in the invoice.  "An obligor is liable for the damages caused by his failure to perform a conventional obligation."[35]  Louisiana law measures a party's damages for breach of contract as "the loss sustained by the obligee and the profit of which he has been deprived."[36]  A primary dispute between the parties focuses on the meaning of one word in this statute: "sustained." Specifically, GIS argues that BEEOO has not "sustained" an injury for which it may recover if it has not paid a given invoice, even if the invoice remains outstanding.

The weight of Louisiana caselaw supports BEEOO's position that it is not required to prove payment of a given invoice to have "sustained" a loss.  For example, in *Abaunza v. Bowman*,[37] a lessor sued a lessee who purportedly damaged a leased

---

[33] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[34] *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).
[35] La. Civ. Code art. 1994.
[36] La. Civ. Code art. 1995.
[37] 252 So. 2d 192 (La. App. 2 Cir. 1971).

property while in occupancy.  The Louisiana Third Circuit upheld damages where the

plaintiff only had an estimated cost of repairs, but had not repaired the property.  It

held: "An estimate of cost of repairs will support a judgment, and it is not necessary

that damaged property be actually repaired."[38]   Similarly, in *Louisiana World*

*Exposition, Inc. v. Halpern*,[39] another section of this Court found that a bankruptcy

court erred in finding that it was necessary for funds to be expended to support a

claim for damages. It stated: "[T]he law is clear than an estimate of the cost of repairs

will support a judgment and it is not necessary that the damaged property actually

be repaired."[40]   Further, such a result makes reasonable sense in the context of

BEEOO's bankruptcy:  although a given invoice may not be paid (perhaps as a result

of the bankruptcy), it could be part of a claim of the bankruptcy, and therefore still

represent a legal obligation on the part of BEEOO.  Accordingly, the Court finds that

under Louisiana law, BEEOO does not need to necessarily provide proof of payment

of an invoice to demonstrate that it sustained a recoverable loss.[41]

The cases cited by GIS are not to the contrary.  The primary case that GIS

relies on is *Cotton v. Needham*.[42]  In that case, a plaintiff's car was damaged in an

---

[38] *Id.* at 194 (citing *Southern Farm Bureau Casualty Ins. Co. v. Burks*, 183 So. 2d 88 (La. App. 1 Cir. 1996); *Lambert v. Allstate Ins. Co.*, 195 So. 2d 698 (La. App. 1 Cir. 1967); *Jackson v. Firemen's Ins. Co.*, 86 So. 2d 220 (La. App. 1 Cir. 1956)).

[39] No. 87-5735, 1989 WL 104063 (E.D. La. Sept. 5, 1989).

[40] *Id.* at *2.

[41] The Court notes that there is one area of law where Louisiana courts do seem to require proof of payment.  Where a plaintiff seeks to recover under a "costs plus" contract, courts have required that a plaintiff (generally a contractor) prove payment to subcontractors.  *See, e.g.*, *Burdette v. Drushell*, 837 So. 2d 54, 66 (La. App. 1 Cir. 2002); *Meg-A Builders, L.L.C. v. Maggio*, No. 2008-CA-0937, 2008 WL 5377614 (La. App. 1 Cir. 2008) (Guidry, J., dissenting in part).  But that Louisiana courts have carved out this specific area of law to explicitly require proof of payment additionally supports the conclusion that proof is payment is not generally necessary to prove a loss.

[42] 253 So. 2d 674 (La. App. 1 Cir. 1971).

automobile accident.  At trial, the plaintiff only offered evidence of a mechanic who

stated that it would cost more than the amount for which the plaintiff had purchased

the car to repair it, and the plaintiff provided no evidence of the car's salvage value.

The court found that the plaintiff did not carry her burden of proof with respect to

damages.  Notably, the court did not reach this conclusion because the plaintiff had

not paid for the damage to the car, but because she had not put on any evidence of

the salvage value of the car, which was directly relevant to the amount of damages

she was entitled to.[43]  *Cotton v. Needham*, therefore, is distinguishable.  Nor does

*IberiaBank v. Broussard*[44] support GIS's position.  GIS overreads one sentence for

this case, which states:  "Broussard's breach of the [contract]—which included both

his disloyalty and his failure to disclose that disloyalty—caused Teche to pay money

that it would not have otherwise paid."[45]  GIS appears to read this sentence as holding

that a damage is "sustained" *only* when a party "pay[s] money that it would not have

otherwise paid."[46]  The Court does not read that sentence similarly.  In making that

statement, the Fifth Circuit was only commenting on what constituted a sustained

loss in Broussard's case, not holding that a loss is sustained only in those

circumstances.  Accordingly, *IberiaBank v. Broussard* has limited relevance to the

issue at hand.  Finally, *Oracle Oil, LLC v. EPI Consultants*[47] similarly does not aid

GIS.  In that case, Oracle Oil sought compensation for damage to a well caused by

---

[43] *Id.* ("In cases in which it is obvious that the cost of repair exceeds the value of the automobile, the proper measure of damages is the difference between its salvage value and its value at the time of the accident.").

[44] 907 F.3d 826 (5th Cir. 2018).

[45] *Id.* at 836.

[46] *Id.*

[47] No. 18-3674, 2019 WL 2395459 (E.D. La. June 6, 2019).

work performed by EPI Consultants.   There, it was undisputed that a separate

company had paid for the expenses related to the well, and the plaintiff could not

establish that any contract existed by which it was required to pay that company

back.   The court therefore found that the plaintiff had not established that it had

sustained damages.   Given its unique circumstances, that case from another section

of this Court does not stand for the broad proposition that a plaintiff may not recover

for a breach of contract if it has not yet paid an invoice for the underlying damage.[48]

In sum, the Court does not find that BEEOO necessarily must have paid an invoice

to have sustained a loss and to recover damages for the invoice.

## B.      Collateral Source Rule

A separate issue raised by GIS is whether the collateral source rule applies in

this matter.   This rule, usually applied in tort matters, prevents the reduction of

damages awarded to a plaintiff by an amount already recovered from an insurer.[49]

Put another way, the question presented by the parties is whether in this breach of

contract action, BEEOO may seek damages for costs which have already been paid

by insurers.

---

[48] The Court further notes that the sole case relied on in *Oracle Oil* regarding this issue was *Koncinsky v. Smith*, 390 So. 2d 1377 (La. App. 3 Cir. 1980), which is also distinguishable here.  There, a plaintiff attempted to prove up damages with cancelled checks.  With little analysis, the court held that the checks did not prove a loss.  But that holding dealt with sufficiency of the evidence, not the legal issue of whether payment is necessarily required to prove a loss.  Indeed, the evidence of cancelled checks in that case could have demonstrated payment, but it seems it was the lack of corroborating proof (e.g., invoices) that prevented the plaintiff from recovering.

[49] *See Royer v. State Department of Transportation & Development*, 210 So. 3d 910 (La. App. 3 Cir. 2017).

GIS cites *Bozeman v. State*[50] and *Hoffman v. 21st Century North America Insurance Company*[51] to argue that the collateral source rule cannot apply in a breach of contract matter. *Bozeman* dealt with the question of whether the collateral source rule could allow a plaintiff to recover amounts "written-off" by doctors for plaintiff's medical expenses because the plaintiff's healthcare providers were paid through the Medicaid program, which requires healthcare providers to accept an amount that is generally lower than what the provider would otherwise charge. *Hoffman* dealt with the similar issue of whether a plaintiff could recover the full amount for medical treatment when his attorney had negotiated a lower fee. In both cases, the Louisiana Supreme Court found the collateral source rule inapplicable.

Although *Bozeman* and *Hoffman* did not strictly limit the application of the collateral source rule to the tort context, the Louisiana Supreme Court clearly described the collateral source rule in terms of tort. The *Bozeman* Court stated the collateral source rule as: "[A] tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution."[52] The court further noted that "[t]he collateral source rule has been applied to a variety of circumstances, although it typically applies to tort cases involving insurance payments or other benefits."[53] The court enumerated other circumstances in which the collateral source rule had been applied, including workers compensation cases,

---

[50] 879 So. 2d 692 (La. 2004).
[51] 209 So. 3d 702 (La. 2015).
[52] *Bozeman*, 879 So. 2d at 698.
[53] *Id.*

environmental damage cases under the Louisiana Environmental Quality Act, and welfare payments.  Tellingly, it did not include among the list any case where a Louisiana court had applied the collateral source rule in a breach of contract action.

Further, BEEOO cites to no case—nor has the court identified one—where a Louisiana state court applied the collateral source rule in a breach of contract action. The primary case that BEEOO cites is *Metoyer v. Auto Club Family Insurance Company*.[54]  In that case, another section of this Court examined *Bozeman* as well as caselaw from other states and reasoned that "it seems that there cannot be a blanket prohibition of the application of the collateral source rule to contract claims as the defendant suggests."[55]  In reaching this conclusion, the *Metoyer* court relied primarily on a 2007 case from a California state court allowing for the use of the collateral source rule in a breach of contract action.  But the court also stated that "[t]o be sure, there are cases which have held that the collateral source rule cannot be used in breach of contract actions" and cited to cases from Indiana and Ohio.[56]  The court further noted, "While the Court could not find any Louisiana case which held such [where the collateral source rule was applied to actions for breach of contract], several cases from other jurisdictions have addressed the issue."[57]  A review of the existing caselaw from other jurisdictions demonstrates that, while courts are split on the subject, a number of courts have held the collateral source rule inapplicable in the

---

[54] 536 F. Supp. 2d 664 (E.D. La. 2008).
[55] *Id.* at 669.
[56] *Id.* at 669 n.7.
[57] *Id.*

breach of contract context.[58]   The Court therefore does not find *Metoyer* to be
dispositive of the issue presented here.

In sum, the Louisiana Supreme Court has described Louisiana's collateral
source rule as one arising in tort that has been applied in a limited number of
analogous circumstances outside of the tort setting.  No Louisiana court has explicitly
held the collateral source rule to apply to a breach of contract claim.  The weight of
the caselaw from other jurisdictions suggests that the collateral source rule does not
extend to breach of contract actions.  Further, this Court has previously expressed a
hesitancy to import doctrines from tort law into this breach of contract action.[59]
Accordingly, the Court finds that the collateral source rule is not appliable in this
breach of contract action.

### C.     Sufficiency of Evidence

An interrelated issue raised by GIS is whether BEEOO has sufficient proof by
which it may demonstrate a loss.  The thrust of GIS's argument is that BEEOO has
failed to preserve evidence (such as Daily Construction Reports), or lacks evidence
(such as proof of payment) that would allow the Court to determine if a given invoice
relates to repair work done as a result of GIS's purported breach.  GIS specifically
argues that the evidence BEEOO  possesses does "not satisfy Civil Code article 1995's

---

[58] *See Niserzon v. Morgan Stanley DW, Inc.*, 546 F. Supp. 2d 213, 235 (E.D. Penn. 2008) (noting that
"an overwhelming majority of jurisdictions have held that the collateral source rule does not apply to
breach of contract actions" and collecting cases from ten jurisdictions).
[59] R. Doc. 329 (Order on Motion for Partial Summary Judgment Regarding Allocation of Fault).  The
Court further notes that BEEOO has previously chastised GIS for arguing what are essentially tort
principles in this breach of contract action.  *See* R. Doc. 315 (BEEOO's Reply Memorandum in Support
of BEEOO's Motion for Partial Summary Judgment Regarding Contractual Provisions asking "Why
Does GIS Want to Discuss Negligence Principles?").

threshold to qualify as damage sustained by BEEOO and therefore must be excluded

from BEEOO's claim."[60]  In response, BEEOO points out that GIS does not ask the

Court to strike any specific items of damages, and therefore argues that GIS's

argument is too general in nature.  BEEOO "agrees that it should not be allowed to

recover damages it cannot adequately prove or support" but characterizes this dispute

as one over whether BEEOO's requisite support is sufficient.

As BEEOO acknowledges, it will bear the burden of proving its claim at trial.

And at trial, the lack of daily construction reports or evidence of payments could well

be fatal to a portion of BEEOO's claim.  But Louisiana courts have suggested that a

party need not produce only the best evidence which ever existed, and have accepted

testimony where documentation was no longer available.[61] Accordingly, Court finds

that a determination regarding whether BEEOO's evidence is sufficient to support

its claim is premature at the summary judgment stage, particularly when BEEOO

plans to rely upon testimony to help sustain its burden.[62]

### D.    Summary Evidence

Finally, in its Motion *in Limine* GIS argues that BEEOO's summary evidence

should be excluded under Federal Rule of Evidence 1006.  The Court notes that in

this evidentiary Motion, GIS makes numerous substantive arguments that are more

properly the subject to a motion for summary judgment and which the Court

---

[60] R. Doc. 237-2 at 9.

[61] *See Pollard v. Schiff*, 161 So. 3d 48, 59 (La. App. 4 Cir. 2015).

[62] In its Reply, GIS argues that BEEOO's failure to cite evidence in contesting each alleged fact GIS stated in its Rule 56.1 Statement of Contested and Uncontested Facts is significant and alters the status of this litigation.  *See* R. Doc. 245.  The Court has previously addressed and rejected such arguments.  *See* R. Doc. 340 at 8 n.40.

addresses above.    The sole evidentiary question that is properly raised in GIS's

Motion *in Limine* is whether Rodney Winkler's Claim Summary should be excluded

under Federal Rule of Evidence 1006. That rule provides, in its entirety, that

> The proponent may use a summary, chart, or calculation to
> prove the content of voluminous writings, recordings, or
> photographs that cannot be conveniently examined in
> court.    The proponent must make the originals or
> duplicates available for examination or copying, or both, by
> the other parties at a reasonable time and place.  And the
> court may order the proponent to produce them in court.[63]

The Fifth Circuit has held that "although summaries must accurately reflect

the underlying records or testimony, they cannot be excluded simply because they

*might* be inaccurate."[64]   Here, BEEOO represents that "[a]ll of the records relied on

by Mr. Winkler in creating his damages spreadsheet were made available to and

provided to GIS."[65]   BEEOO is upfront that some categories of evidence summarized

are not supported by documentary evidence, but will instead by supported by

testimony at trial.[66]  This is a method the Fifth Circuit has endorsed.[67]

GIS relies primarily upon *Underwriters at Lloyd's London v. OSCA, Inc.*[68] to

argue that Federal Rule of Evidence 1006 requires exclusion of Winkler's summary

evidence.  Notably absent from that case is any discussion whatsoever of Federal Rule

of Evidence 1006, the very rule that GIS argues now requires exclusion of the

summary evidence.  Moreover, GIS overreads *Underwriters at Lloyd's London*.   In

---

[63] Fed. R. Evid. 1006.
[64] *Right of Way Maintenance Co. v. Gyro-Trac Inc.*, 303 F. App'x 229, 230 (5th Cir. 2008) (internal quotations omitted) (emphasis in original).
[65] R. Doc. 204 at 9.
[66] *Id.* at 9-10.
[67] *Right of Way*, 303 F. App'x at 230.
[68] 2006 WL 941796 (5th Cir. Apr. 12, 2006).

that case, the Fifth Circuit explicitly recognized "circuit precedent authorizing proof of damages through introduction of summary evidence in lieu of voluminous records."[69]   Indeed, the appellant in that case did not argue that the summary evidence was not admissible, only that it was insufficient to prove the damages found by the jury.   At trial, GIS will have the opportunity to demonstrate inaccuracies in Winkler's summary.   The summary evidence is not, however, excludable under Federal Rule of Evidence 1006.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that GIS's Motion for Partial Summary Judgment on Damages is **GRANTED IN PART AND DENIED IN PART** as set forth herein.   **IT IS FURTHER ORDERED** that BEEOO's Motion for Partial Summary Judgment Regarding Recovery of Unpaid Invoices is **GRANTED IN PART AND DENIED IN PART** as set forth herein.   **IT IS FURTHER ORDERED** that GIS's Motion *in Limine* to Exclude Summary Evidence Under Federal Rule of Evidence 1006 is **DENIED**.

New Orleans, Louisiana, March 3, 2021.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[69] *See id.*, at *10 (citing *New Amsterdam Casualty v. W.D. Felder & Co.*, 214 F.2d 825 (5th Cir. 1954)).